# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| KAREN RASCH,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | No. ED CV 05-00008 (SH)<br><br>MEMORANDUM OPINION<br>AND ORDER |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits under Sections 216(I) and 223 of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On March 31, 1997 and October 22, 1999, plaintiff Karen Rasch filed applications for a period of disability or Disability Insurance Benefits alleging an inability to work since October 14, 1994. (Administrative Record ["AR"] 184-85, 250-53). On June 28, 2001, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 150-54).

Following plaintiff's request for a review of the hearing decision (AR 189), the Appeals Council remanded the case to the ALJ with instructions to "evaluate the claimant's subjective complaints, including the testimony of her husband, and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.9299) and Social Security Ruling 96-7p." (AR 192-93). On February 27, 2004 (on remand), the ALJ determined that plaintiff was disabled within the meaning of the Social Security Act. (AR 15-26).

Plaintiff makes two challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred (1) in failing to properly evaluate Dr. Gregory Gullo's opinion of disability; and (2) in failing to properly consider Dr. David Kawashiri's opinion of disability.

Each of plaintiff's contentions will be addressed in turn.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Gregory Gullo, that plaintiff was disabled based on Dr. Gullo's consistent diagnosis of fibromyalgia. Respondent argues that the ALJ did not have to address Dr. Gullo's opinion because it was not significant or probative as to whether plaintiff was disabled prior to September 30, 1998, the date plaintiff was last insured, based on the fact Dr. Gullo did not start to treat plaintiff until October 2001. Respondent further argues that the ALJ properly found that the record did not support Dr. Gullo's diagnosis of

fibromyalgia. In reply, plaintiff argues that the ALJ was obliged to address Dr. Gullo's opinion because his medical evaluations were relevant to an evaluation of plaintiff's condition prior to expiration of her disability insurance.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). Common symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. See Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1; Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)("[T]he only symptom that discriminates between [fibromyalgia] and other diseases of rheumatic character [is] multiple tender spots ["or trigger points"], more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."). The cause of fibromyalgia is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. Benecke v. Barnhart, supra, 379 F.3d at 590.

A treating physician's opinion is entitled to greater weight than that of an examining physician. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); 20 C.F.R. § 416.927(d)(1). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, supra (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 n.7 (9th Cir. 1989)). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-

(d).  "The [Commissioner] may disregard the treating physician's opinion whether or not that opinion is contradicted."  Magallanes v. Bowen, supra (citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).  A treating physician's medical opinion unsupported by described medical findings, personal observations, or test results may be rejected.  See Burkart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988).

A medical opinion is considered uncontroverted if all the underlying medical findings in the record of plaintiff's physical impairments are similar.  Sprague v. Bowen, supra.  "To reject the uncontroverted opinion of a claimant's physician, the [Commissioner] must present clear and convincing reasons for doing so."  Magallanes v. Bowen, supra (citing Rodriguez, supra, 876 F.2d at 761-62); see also Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)("When a non-treating physician's opinion contradicts that of the treating physician—but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician—the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984).

In the instant case, Dr. Gullo repeatedly diagnosed plaintiff with fibromyalgia, from April through August 2001, and April 2002 through December 2003.  (See AR 955, 957, 959-60, 1003-06, 1008-09, 1011-13, 1015, 1019, 1021, 1023-26, 1028-34, 1036, 1038, 1040-43, 1045, 1047).  In a Fibromyalgia Residual Functional Capacity Questionnaire dated January 28, 2004, Dr. Gullo indicated that plaintiff, who suffered symptoms of multiple tender points, chronic fatigue and morning stiffness with a possibility of other symptoms,  and who had marked limitations in her ability to deal with stress and experienced drowsiness from medication, was not able to perform even sedentary work.  Dr. Gallo indicated that, in an eight-hour workday (with normal breaks) plaintiff could stand/walk and sit for less than two hours, needed to walk for five minutes every sixty minutes, could frequently lift less than ten pounds, could occasionally lift

4

twenty pounds, could occasionally bend and twist, with no manipulative limitations. (AR 1050-53).

As a preliminary matter, the Court rejects defendant's argument that the ALJ did not have to address Dr. Gullo's opinion because Dr. Gullo treated plaintiff after the date plaintiff was last insured. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).

However, after reviewing Dr. Gullo's treatment records, the ALJ found that the evidence did not support Dr. Gullo's diagnosis: "[While] the claimant might have symptoms of fibromyalgia, there are no medical records to show that she had met the clinical diagnosis of fibromyalgia, and no examinations indicating the necessary specific trigger points for such a diagnosis. Furthermore, there are no indications that her symptoms are unrelenting." (AR 21). After noting that Dr. Gullo had admitted he did not know whether plaintiff met the American Rheumatological criteria for fibromyalgia (in a January 28, 2004 questionnaire); that Dr. Gullo's treatment records did not show plaintiff had persistent complaints of fatigue or headaches or persistent sleep disturbances; that plaintiff had not reported any problems with tiredness, sluggishness or severe depression (in an October 24, 2001 new patient questionnaire); and that plaintiff had reported very little pain with her life-support activities such as eating, sleeping and breathing (in an undated pain disability index questionnaire), the ALJ found "the assertions by Dr. Gullo that the [plaintiff] suffers from fibromyalgia are not consistent and not supported by his own examination findings as well as the overall objective medical evidence in the record." (Id.). As a result, the ALJ expressly gave Dr. Gullo's opinion "little significant weight." (Id.)

The ALJ stated that there were no medical records showing persistent episodes of two of the most common symptoms of fibromyalgia, namely, 11 of 18 tender points and widespread pain in all four body quadrants for three months. (Id.). The ALJ noted that

"[t]here is no evidence that the claimant had persistent and unrelenting symptoms of debilitating fatigue and her pain was generally located in the low back and mid thoracic area" and that "treatment records show the claimant's back pain symptoms are intermittent and have improved at times and there is no indication that her symptoms are unrelenting." (A.R. 21).

With respect to Dr. Gullo's opinion in the January 2004 questionnaire that plaintiff could not perform even sedentary work, the ALJ found that "the assertions of Dr. Gallo are inconsistent with his own treatment records and the overall objective findings in the medical evidence" and gave Dr. Gallo's assertions "little probative weight." (AR 22). The ALJ noted that Dr. Gullo's treatment notes did not contain references to persistent or occasional complaints of fatigue or morning stiffness. (Id.). The ALJ further noted that the medical records indicated that the only medicines causing plaintiff drowsiness had been discontinued. (Id.).

Since Dr. Gullo's diagnosis and opinions were not supported by medical findings or test results, the ALJ did not err in giving little weight to Dr. Gullo's diagnosis and opinions. See Burkart v. Bowen, supra. Moreover, the ALJ provided clear and convincing reasons for rejecting Dr. Gullo's diagnosis and opinions. See Magallanes v. Bowen, supra; Morgan v. Apfel, supra.

The ALJ found more credible the opinion of a non-examining physician (Dr. Joseph Jensen, an orthopedic surgeon). (AR 22-23). Dr. Jensen testified that although a rheumatologist identified probable fibromyalgia, there was no evidence of the actual delineation of specific trigger points. (AR 105). Dr. Jensen further testified that, at the time of the September 30, 1998 cut-off, plaintiff could occasionally lift up to 20 pounds, frequently lift 10 pounds, stand and walk six hours out of an eight-hour workday, sit six hours out of an eight-hour workday (with the opportunity to change position every 60 minutes for one or two minutes, in addition to regular rest periods), occasionally balancing, bending, stooping, kneeling and crawling (no climbing ladders, ropes or

scaffolds), without any manipulative or environmental limitations. (AR 106). Dr. Jensen further testified that, even though the medical records reflected that plaintiff received pain medication in October 1998, was dependent on prescribed narcotic analgesics in 1997, and had received more extensive pain treatment over the past several years, and even though a person with chronic pain may have difficulty concentrating, there was no evidence in the record indicating that plaintiff had a problem concentrating. (AR 107-13). Dr. Jensen's opinions supported the ALJ's findings that plaintiff had the residual functional capacity to perform unskilled sedentary work and was not disabled. See Morgan v. Apfel, supra.

**ISSUE NO. 2**

Plaintiff asserts that the ALJ failed to properly consider the opinion of plaintiff's treating physician, Dr. David Kawashiri, that plaintiff was disabled and unable to work. In response, defendant argues that the ALJ's rejection of Dr. Kawashiri's opinion was proper given the lack of laboratory or clinical findings to support Dr. Kawashiri's opinion. Defendant further argues that the opinions of Dr. Kawashiri (who treated plaintiff from June 1995 to January 1997) were not probative as to whether plaintiff was disabled on September 30, 1998. In reply, plaintiff argues that, contrary to defendant's assertion, there were laboratory and clinical findings supporting Dr. Kawashiri's opinion.

After considering Dr. Kawashiri's treatment records indicating that plaintiff was disabled and unable to return to work (AR 825-31), the ALJ made the following findings:

> "While it is reasonable the claimant would be unable to perform significant work activity during brief periods of recovery from her surgical procedures, I find Dr. Kawashiri's continued expressions of disability and inability to work are not based on clinical or objective evidence but largely on the claimant's own complaints and account of her symptoms and limitations (Exhibit 8F [AR 611-774]). The doctor

offered no laboratory or clinical findings to support his conclusory statement. Furthermore, the medical opinions and notes throughout the record weigh heavily against the claimant's allegations of disability for reasons discussed herein. The allegations of symptom levels that preclude all types of work are not consistent with the evidence as a whole and are not credible." (AR 24).

Contrary to plaintiff's assertion, Dr. Kawashiri's notation that plaintiff had "[u]pper and lower back pain, h/o herniated disc, chronic diarrhea, depression" (AR 830) were not laboratory or clinical "findings" supporting his opinion of disability. Dr. Kawashiri's notation was historical and conclusory . There simply were no laboratory or clinical findings or test results contained in Dr. Kawahiri's treatment records, and therefore the ALJ did not err in rejecting Dr. Kawashiri's opinion. See Burkart v. Bowen, supra. The ALJ provided clear and convincing reasons for rejecting Dr. Kawahiri's opinion. See Magallanes v. Bowen, supra; Morgan v. Apfel, supra.

Dr. Kawashiri's treatment notes did not address whether plaintiff was disabled as of September 30, 1998. Indeed, on January 15, 1997 (apparently the last time Dr. Kawashiri saw plaintiff), Dr. Kawashiri indicated he was unable to determine when plaintiff could return to work (and scheduled plaintiff for a follow-up appointment in three months). (AR 831). Moreover, as noted above, Dr. Jensen, whom the ALJ found to be more credible, supported the ALJ's findings about plaintiff's residual functional capacity and lack of disability. See Morgan v. Apfel, supra.

## ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: January 9, 2006

/S/

|   |   |
|---|---|
| 1 | STEPHEN J. HILLMAN |
| 2 | UNITED STATES MAGISTRATE JUDGE |